**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TARA DORSEY,** | : | **CIV NO. 1:16-CV-588** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

Prisoners bringing civil actions in federal court must steer a careful course between twin legal pillars of timeliness.  For inmates who bring civil rights actions against their jailers while incarcerated, the first of these pillars is the Prison Litigation Reform Act's ("PLRA") requirement that prisoners present their claims through an administrative grievance process prior to seeking redress in federal court.  42 U.S.C. § 1997e(a).  By its terms, the PLRA provides that "[n]o action shall be brought with respect to prison conditions ... by *a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added).  This statutory text has led courts to conclude that a prisoner plaintiff may avoid the PLRA's

exhaustion requirement by deferring the filing of a civil action until after the inmate's release, since the PLRA, which only extends to lawsuits brought "by a prisoner confined in any jail, prison, or other correctional facility," has no application to cases filed by former inmates upon their release from custody. Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

There is a separate peril to this course, however, since a former prisoner who adopts this path and delays filing a complaint may well run afoul of the two year statute of limitations which applies to federal civil rights actions. This case aptly illustrates these twin perils. The plaintiff, Tara Dorsey, a former inmate at both SCI-Muncy and SCI-Cambridge Springs, filed a complaint on April 8, 2016, following her release from prison, pursuant to 42 U.S.C. §1983 claiming that the Pennsylvania Department of Corrections ("DOC") as well as several other prison officials and independent contractors violated her Eighth Amendment rights. Dorsey alleged that while she was incarcerated, she experienced medical issues with an implanted medical device, a spinal cord stimulator, which was intended to address the symptoms of Dorsey's complex regional pain syndrome. Dorsey has alleged well-pleaded facts and filed an affidavit which reveal that these medical complications existed when she began her incarceration in 2009, were exacerbated by an injury she suffered in June of 2011, were thoroughly diagnosed by an outside specialist who recommended surgical removal of this device in December of 2012,

and were fully and subjectively appreciated by Dorsey by September of 2013, when Dorsey has sworn that she launched a campaign to secure this surgery.  Yet, despite Dorsey allegations that she made numerous requests for medical care dating back many years, it is undisputed that Dorsey did not fully exhaust administrative remedies concerning this medical complaint while she was in prison.  Instead, Dorsey deferred the filing of any legal action until April 2016, nearly two years after her release from custody and more than three years after she was made aware of the need for surgical removal of this medical device, a medical mishap which forms the basis for her federal civil rights complaint.

Given this backdrop, the defendants have now filed three motions to dismiss, which we have converted to motions for summary judgment, (Docs. 9, 16, and 40.), which raise two threshold dispositive issues, arguing:  (1) that Dorsey failed to exhaust her administrative remedies prior to initiating this lawsuit and (2) that the statute of limitations for the Dorsey's claims has run.  We have converted these motions to motions for summary judgment and, for the reasons set forth below, based upon Dorsey's own sworn declaration filed in opposition to these motions, we conclude that, while Dorsey has steered a course which avoided the Scylla of the PLRA's exhaustion requirement, her claims founder upon the Charybdis of the statute of limitations.  Therefore, we recommend that this complaint be dismissed as untimely.

## II.    Statement of Facts and of The Case

Drawing upon Dorsey's own sworn declaration in this case, (Doc. 49.), we find that the following facts are essentially undisputed:  Prior to her incarceration, Dorsey began suffering from complex regional pain syndrome.[1] As a result, on February 18, 2009, she had a thoracic spinal cord stimulator surgically implanted in her right lower back.  (Doc. 49,¶¶ 3-4.)  Dorsey then began serving her prison time at SCI-Muncy on November 20, 2009.  At the time of her arrival at the prison the defendants were notified of her medical condition.  (Id., ¶ 5.)

While incarcerated at SCI-Muncy, in June of 2011 Dorsey sustained an injury to her lower back, near the site of the stimulator, while working in the prison kitchen.  (Id., ¶7.)  Although Dorsey claims that she did not immediately recognize that the June 2011 back injury may have led to further medical complications relating to this implanted medical device, she acknowledges that she began complaining of back pains, and received treatment and a neurological examination in the Fall of 2011 while she was housed at SCI Muncy.  (Id., ¶¶ 8-13.)

---

[1] Complex Regional Pain Syndrome is a chronic condition that causes an unexplained feeling of pain and discomfort that most commonly affects an arm, leg, hand or foot.  Often, it begins in the hand or foot and then spreads to affect the entire limb.  John Hopkins Medicine Health Library, *Complex Regional Pain Syndrome*, http://www.hopkinsmedicine.org/healthlibrary/conditions/adult/nervous_system_disorders/complex_regional_pain_syndrome_134,103/ (last visited 10/11/2016).

In May of 2012, Dorsey was transferred to SCI Cambridge Springs, where she remained until the Spring of 2013.  (Id., ¶¶ 14, 24.)  While at SCI Cambridge Springs, Dorsey attests that she endured significant and debilitating pain in the area of her spinal cord stimulator and constantly complained to her jailers about her condition.  (Id.,¶ 17.)  Moreover, according to Dorsey's own sworn account of these events, by December 2012 she was informed:  that the medical implanted device was the source of her pain; that the device could cause enduring injuries; and she knew that a medical expert had recommended the surgical removal of the device.   Specifically, Dorsey alleges that on December 4, 2012, she was transported to Hamot Hospital in Erie, Pennsylvania, where she was seen by a neurosurgeon, Dr. William Diefenbach, who performed a thorough physical examination and concluded that her pain was caused by a defective stimulator device.  According to Dorsey, Dr. Diefenbach informed her that the device may also be causing nerve damage, and recommended the surgical removal of the device. (Id., ¶¶ 18-19.)

The failure to follow this recommendation and provide this surgery lies at the heart of Dorsey's claims in this case, and Dorsey's sworn declaration makes it clear that the plaintiff had a full subjective appreciation of these medical risks and dangers as early as December 2012.   Indeed, Dorsey states this subjective appreciation in stark terms in her declaration, alleging that:  "When Dr. Diefenbach

said [in December 2012] the stimulator needed to be removed, I am of the belief that the Commonwealth of Pennsylvania Department of Corrections had the moral obligation to follow through on what the specialist recommended.   My pain throughout my period of incarceration was constant and unrelenting." (Id., ¶ 34.)

Dorsey's complete and longstanding understanding of the nature of the medical failures which now form the basis of her 2016 lawsuit are further underscored by the affidavit which she has filed in this case.  That affidavit reveals that, following her December 2012 appointment and consultation with Dr. Diefenbach Dorsey expected to have surgery scheduled to remove this stimulator device.  (Id., ¶ 20.)  While Dorsey alleges that the staff at SCI Cambridge Springs did not act upon this recommendation, she met with a representative of the medical device manufacturer in April of 2013, who advised her of the possibility of nerve damage due to the positioning of the device in her back.  (Id., ¶¶ 21-22.)  This report further confirmed the medical opinion Dorsey had received from Dr. Diefenbach four months earlier, in December of 2012.

Dorsey then alleges that she was transferred to SCI Muncy in the Spring of 2013, met with medical personnel at that facility in April of 2013, and was advised that they were taking steps to prepare for her to receive this surgery.  (Id.,¶ 24.) This averment by Dorsey further underscores and highlights her total understanding of the medical issues which she was confronting, an understanding

which she possessed three years prior to filing this lawsuit.  Yet, according to Dorsey as the scheduled date for this surgery approached in September 2013, she was informed by medical personnel that the prison would not undertake this operation, citing cost factors.  Dorsey's affidavit makes it plain that she completely understood the consequences of this proposed course of action when it occurred in the Fall of 2013, since Dorsey attests that:  "At this juncture, I started writing to the Superintendent and all department heads about my debilitating pain and discomfort and the failure of the Department of Corrections to address this matter."  (Id., ¶25.)

It is difficult to imagine a more complete, and fulsome description of a subjective awareness by a plaintiff of both an injury and the purported cause of that injury.  Nonetheless it is undisputed that Dorsey did not act upon this matter by filing a lawsuit within two years of her reported complaints in the Fall of 2013 concerning her "debilitating pain and discomfort and the failure of the Department of Corrections to address this matter." (Id., ¶25.)  Indeed, Dorsey took no action to bring this lawsuit prior to her release from custody in August 2014.  (Id., ¶26.)  Further, it seems undisputed that Dorsey never fully exhausted her administrative remedies within the prison system with respect to this medical decision while she was incarcerated.  Once released, Dorsey underwent medical treatments and procedures in August through December 2014, which confirmed what she had been nearly two years earlier by Dr. Diefenbach in December of 2012—her

medical complications and pain had been caused by this implanted device.  (Id., ¶¶ 27-32.)  Dorsey then delayed filing this civil action until April 8, 2016, some 3 years and 4 months after she had been informed of the necessity of this surgery by Dr. Diefenbach in December 2012, and approximately 2 years and 6 months after it had been confirmed for her that she would not receive this recommended surgery in September 2013.

It is against this undisputed factual background that we consider the defendants' potentially dispositive motions which seek dismissal of this complaint for failure to exhaust administrative remedies under the PLRA, as well as seeking dismissal of this complaint as time-barred by the applicable statute of limitations. (Docs. 9, 16, and 40.)  For the reasons set forth below, it is recommended that this case be dismissed as time-barred under the statute of limitations.

### III.   Discussion

#### A.   Summary Judgment Standard of Review

The defendants initially moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and presented two central arguments in support of their motions.  First, the defendants argued that the complaint must be dismissed because Dorsey did not exhaust all of her administrative remedies.  Pursuant to the Prison Litigation Reform Act, 42 U.S.C. §1997e(a), "no action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law,

by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  The defendants contend that Dorsey failed to comply with this statutory mandate because she did not fully and properly exhaust her claims against each of the defendants through the Pennsylvania Department of Corrections' grievance policy.  Second, the defendants argued that Dorsey's claims are barred by the two-year statute of limitations that is applicable to claims brought under 42 U.S.C. § 1983, such as those brought in this case.

In these motions the defendants invited the Court to consider these two affirmative defenses and presented matters outside of the pleadings in support of these defenses, including records that the defendants insisted proved that the plaintiff did not exhaust administrative remedies prior to bringing suit.  In such cases, where we receive matters outside the pleadings in support of a potentially dispositive motion, a court may convert a motion to dismiss into a motion for summary judgment.  Rule 12(d) of the Federal Rules of Civil Procedure specifically provides for such conversion as follows:

> If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

This conversion requirement ensures "that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular state of the litigation." Global Network Communications, Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006). Additionally, conversion provides notice and allows the non-moving party to contest the evidence submitted by the movant. Id.

A district court must provide adequate notice of the conversion and allow the parties a reasonable opportunity to submit materials to support or oppose summary judgment. Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir. 1996) (quoting *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989). Notice must be unambiguous, it must "fairly apprise" the parties of the court's intent to convert the motion to dismiss to a motion for summary judgment, and it should be expressly provided by the court. In Re Rockefeller Ctr. Prop., Inc. Sec. Litig., 184 F.3d 280, 288 (3d Cir. 1999). Further, courts have incorporated the notice provision of Federal Rule of Civil Procedure 56 into the "reasonable opportunity" language of 12(d). Hancock Indus., Inc. v. Schaeffer, 811 F.2d 225, 229 (3d Cir. 1987). Therefore, the parties are generally entitled to ten days in which to submit material pertinent to the converted motion for summary judgment. Id.

Here, we provided such notice to all parties, and the plaintiff has taken advantage of this opportunity to file supplemental pleadings, including an affidavit

from Ms. Dorsey which details her longstanding subjective awareness of the medical issues which now form the gravamen of this complaint. (Doc. 49.) Therefore, these motions are now ripe for consideration as motions for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure, governs motions for summary judgment, and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56 (a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co.,

Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials."  Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial."  Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981).  Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule  56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must "consider all evidence in the light most favorable to the party

opposing the motion." <u>A.W. v. Jersey City Pub. Schs</u>., 486 F.3d 791, 794 (3d Cir. 2007).

Judged against these legal guideposts, and guided by Dorsey's own uncontested sworn statements regarding the depth of her subjective knowledge concerning the medical matters which form the heart of this complaint, we find that Dorsey's affidavit, (Doc. 49.), reveals that this case is now time-barred.

## B.    The Plaintiff's Complaint is Time Barred

In their motions, the defendants assert that Dorsey's complaint must be dismissed both because she failed to comply with the administrative exhaustion requirement of the PLRA and because her claims are now time-barred by the statute of limitations.  The defendants' PLRA exhaustion claims warrant only brief consideration.  In this case it is now undisputed that Dorsey filed her complaint on April 8, 2016, nearly two years after her release from custody in August of 2014. On these facts the PLRA simply has no application to a lawsuit filed by a former inmate.  By its terms, the PLRA provides that "[n]o action shall be brought with respect to prison conditions ... *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  Given this statutory text, it is well-settled that a prisoner plaintiff may avoid the PLRA's exhaustion requirement by deferring the filing of a civil action until after the inmate's release, since the

PLRA, which only extends to lawsuits brought "by a prisoner confined in any jail, prison, or other correctional facility," has no application to cases filed by former inmates upon their release from custody.  Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).  Therefore, Dorsey has successfully navigated this procedural shoal and her claims are not barred by the PLRA's exhaustion requirement.

However, Dorsey's strategic delay in the filing this action for more than two years now bars her claims under the statute of limitations.  On this score, it is clear that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years.  42 Pa.C.S. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, or the discovery rule, a plaintiff must make an exacting showing to avail herself of these grounds for tolling the statute of limitations.  For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite

information [to state a cause of action].  *On discovering an injury and its cause, a claimant must choose to sue or forego that remedy*."  Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986))(emphasis added).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement."  West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991).  In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts."  West, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry, we have recognized that courts should consider at least three factors:  (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors.  See Berry, 715 F.2d at 981.

> Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In addition, "Pennsylvania law recognizes that '"in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of due diligence, reasonably discover that he has been injured.'" Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir.2003) (quoting Crouse v. Cyclops Indus., 560 Pa. 394, 745 A.2d 606, 611 (Pa.2000)). In such cases, the discovery rule will serve to toll 'the running of the applicable statute of limitations *until the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct*.' Crouse, 745 A.2d at 611." Montanez v. York City, Pa., No. 1:12-CV-1530, 2012 WL 6561757, at *9 (M.D. Pa. Dec. 17, 2012)(emphasis added). In every instance, however, Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Wilson v. Giesen, 956 F.2d 738, 740 (7th Cir. 1992).

Furthermore, "[t]he party relying on the discovery rule bears the burden of proof." Wilson v. El-Daief, 600 Pa. 161, 175, 964 A.2d 354, 362 (2009). Where that burden is not met, and more than two years have elapsed, courts routinely dismiss medical claims on statute of limitations grounds. Thus, in cases involving alleged refusal of necessary medical treatment, "the limitations period runs from the time plaintiff reasonably should have known that the defendant was deliberately indifferent to h[er] serious medical need, and not from the time the full

extent of any loss or damages resulting from the constitutional violation was known." See Two Rivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999) (limitations period runs from time plaintiff "knew or had reason to know of the [defendant's] deliberate indifference to his medical needs"); Hill v. Godinez, 955 F. Supp. 945, 950-51 (N.D. Ill. 1997) (limitations period for § 1983 claim commenced when surgery was not performed at time recommended); Stires v. Zettlemoyer, 2000 U.S. Dist. LEXIS 4232, 4-5 (E.D. Pa.Mar. 31, 2000) ("Plaintiff clearly knew or should have known of the denial or delay of medical treatment by defendant . . . when surgery was recommended and then not provided.").   Likewise, when applying Pennsylvania's discovery rule to statute of limitation tolling requests involving medical claims, it is clear that the plaintiff "need not have known the precise medical cause of the injury in order to commence the running of the statute of limitations.  She need only to have known was that she was *injured*.  'An injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.'  Ayers v. Morgan, 397 Pa. 282, 290, 154 A.2d 788, 792 (1959)."  Groover v. Riddle Mem'l Hosp., 357 Pa. Super. 420, 428, 516 A.2d 53, 57 (1986).  Where the plaintiff knows the fact of her injury but delays, the discovery rule does not toll the limitations period.  Id.

Judged by these standards, Dorsey's own sworn statement filed in response to these dispositive motions reveals that her claims are time barred because Dorsey

undeniably knew more than two years prior to the filing of this lawsuit that she was injured by the alleged inaction of the defendants.   Dorsey's longstanding understanding of the nature of the medical failures which now form the basis of this 2016 lawsuit is fully illustrated by the affidavit which she has filed in this case. (Doc. 49.)  Specifically, Dorsey alleges that on December 4, 2012, she was seen by a neurosurgeon, Dr. William Diefenbach, who performed a thorough physical examination and concluded that her pain was caused by the defective stimulator device which had been implanted in her back.   According to Dorsey, Dr. Diefenbach informed her that the device might be causing nerve damage, and recommended the surgical removal of the device.  (Id., ¶¶ 18-19.)  Dorsey's sworn declaration makes it clear that the plaintiff had a full subjective appreciation of the medical risks and dangers she faced as a result of this device as early as December 2012.   Indeed, Dorsey has described her subjective appreciation in stark terms, stating that:   "When Dr. Diefenbach said [in December 2012] the stimulator needed to be removed, I am of the belief that the Commonwealth of Pennsylvania Department of Corrections had the moral obligation to follow through on what the specialist recommended.   My pain throughout my period of incarceration was constant and unrelenting."  (Id., ¶ 34.)

Dorsey's complete appreciation of the nature of these medical failures was further underscored by her sworn statement that, following her December 2012

appointment and consultation with Dr. Diefenbach, she expected to have surgery scheduled to remove this stimulator device.  (Id., ¶ 20.)  While Dorsey alleges that the staff at SCI Cambridge Springs did not act upon this recommendation, she also states that she met with a representative of the medical device manufacturer in April of 2013, who advised her of the possibility of nerve damage due to the positioning of the device in her back.  (Id., ¶¶ 21-22.)  This report further confirmed the medical opinion Dorsey had received from Dr. Diefenbach in December of 2012.

Dorsey then alleges that she was transferred to SCI Muncy in the Spring of 2013.  At this facility Dorsey met with medical personnel in April of 2013, and was assured they were scheduling her to receive this surgery.  (Id.,¶ 24.)  Yet, according to Dorsey, as the scheduled date for this surgery approached in September 2013, she was informed by medical personnel that the prison would not undertake this operation, citing cost factors.  Dorsey's own statement then makes it plain that she completely understood the consequences of this proposed course of action as it occurred in the Fall of 2013, since Dorsey attests that:  "At this juncture, I started writing to the Superintendent and all department heads about my debilitating pain and discomfort and the failure of the Department of Corrections to address this matter."  (Id., ¶25.)

As we have noted, it is difficult to imagine a more complete description of a subjective awareness by a plaintiff of both an injury and the purported cause of that injury than Dorsey's own statements regarding the extent of her knowledge concerning these medical matters between December 2012 and September 2013. Further, it is uncontested that Dorsey then delayed filing this civil action until April 8, 2016, some 3 years and 4 months after she had been informed of the necessity of this surgery by Dr. Diefenbach in December 2012, and approximately 2 years and 6 months after it had been confirmed for her that she would not receive this recommended surgery in September 2013, a decision which caused her to "writ[e] to the Superintendent and all department heads about my debilitating pain and discomfort and the failure of the Department of Corrections to address this matter." (Id., ¶25.) Therefore, we need only credit Dorsey's own statements to conclude that more than two years had elapsed after she "kn[ew] or reasonably should [have] know[n] that [s]he has been injured and that h[er] injury has been caused by another party's conduct.' Crouse, 745 A.2d at 611." Montanez v. York City, Pa., No. 1:12-CV-1530, 2012 WL 6561757, at *9 (M.D. Pa. Dec. 17, 2012). On these facts, which are recited by Dorsey herself, the two year statute of limitations applies and bars these claims.

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' dispositive motions which we have converted to motions for summary judgment (Docs. 9, 16 and 40.) be GRANTED, and this complaint should be dismissed as time-barred under the statute of limitations.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of November 2016.

*__S/Martin C. Carlson__*
Martin C. Carlson
United States Magistrate Judge